ALBERT JEWETT *versus* WILLIAM C. WHITNEY *& als.*

In case of a grant by deed, the law presumes the party intended to convey something; but there is no presumption in case of a levy, and the party must rely upon the return of the appraisers and the officer to give him an estate not invalidated or rendered void by exceptions or qualifications.

The case of *Jewett* v. *Whitney*, 43 Maine, 242, re-examined and sustained.

A levy upon the land and privilege upon which a mill stands, excluding the mill, is void.

If the mill and land on which it stands are not included in the levy, no seizin *of that part* was delivered to the creditor by the officer, and the levy cannot aid him in sustaining a *possessory* title thereto, which he can only acquire by actual and exclusive possession, claiming as owner, continued for twenty years.

ON EXCEPTIONS to the rulings of DAVIS, J., and MOTION TO SET ASIDE VERDICT.

This was a WRIT OF ENTRY, dated October 20, 1858, commenced against William C. Whitney, who deceased while the suit was pending, and his heirs were admitted to defend. The estate demanded was "one undivided half of a certain gristmill, and one undivided half of the land on which it stands," &c.

The tenants pleaded the general issue, and claimed compensation for buildings and improvements.

Both parties claim title under Sumner Stone; the demandant, by sundry deeds; — the tenants, by levy.

On May 9, 1836, said William C. Whitney caused all said Stone's real estate, &c., in the county of Oxford, to be attached on a writ in his favor against said Stone. Judgment was recovered in that action in November, 1837, and, on December 11th, the execution that issued was levied on the premises in controversy, and other premises.

The premises are thus described in the return of the appraisers :— "And, also, one other tract of land situated in Waterford in said county, and on Crooked river, so called, it being one undivided half of said tract, with one undivided half of a water privilege sufficient for a gristmill, exclusive

of the gristmill now standing on said premises, said piece of land is bounded as follows, viz. : — Beginning at the slip floom-post at the south-west corner of said slip and runs south, fifty-three degrees west, four rods to a stake and stones standing by the road leading to the gristmill now standing on the premises ; thence south, fifty degrees east, three rods and nine links to a stake and stones ; thence north, sixty-five degrees east, three rods and thirteen links into the south-westerly branch of said Crooked river, about the center of said stream ; thence up the center of said stream to the first mentioned bounds, which said tract of land and water privilege we have on our oaths appraised at the sum of two hundred dollars, which the one-half of said appraisal is one hundred dollars, and no more."

It appears, from the bill of exceptions, that the presiding Judge instructed the jury that the levy upon said premises was void, for the reason that it was a levy upon the land and privilege, upon which the mill stood, excluding the mill, which was admitted to be then standing thereon.

"The tenants further claimed that William C. Whitney had acquired a title of twenty years adverse possession before the commencement of this suit. Upon this point, the presiding Judge called the attention of the jury to the evidence that, before said levy, Stone had conveyed the premises to Barrows, who remained in possession until he sold his interest to the demandant ; that there was no evidence that Barrows acknowledged any title of Whitney before his bond of Nov. 5th, 1841 ; and he instructed the jury that the transient seizin delivered to Whitney by the officer who made the levy, the possession of Barrows not being interfered with, was not such a possession as to constitute a disseizin of said Barrows, by said Whitney, and that, if there was no disseizin until 1841, if then admitted, it had not continued twenty years when the suit was commenced. And the jury were instructed that the evidence in the case on the question of title would authorize them to find a verdict for the demandant."

The tenants also claimed "that William C. Whitney, had been in actual possession six years or more when the suit was commenced, and that they were therefore entitled to the benefit of an appraisal of the increased value of the premises by reason of the buildings erected, and improvements made by him."

There was no dispute that said Whitney took actual possession, July 10, 1854, and that the demandant had then had possession several years, embracing that portion of the six years prior to July 10, 1854. The tenants claimed that he was in possession under his agreement for a deed from said Whitney, that he was therefore a tenant at will, and estopped from denying Whitney's title, and that his possession was the actual possession of the said Whitney.

The jury were instructed that, if the demandant took possession of the premises, under his agreement for a deed from Whitney, having no other claim of title thereto, he was estopped from denying Whitney's title, and his possession was the actual possession of said Whitney; that, if he took possession before his deed from Kilborn, of April 2, 1849, the jury might infer that he took possession under his agreement from Whitney; and that, in such case, if Whitney erected buildings, or made improvements before he had notice that he, the demandant, had acquired or was claiming title from any other source, the tenants were entitled to the benefit of having the increased value of the premises by reason thereof appraised.

But that, if the jury should find that Barrows had possession, claiming title under his deed from Stone, and took the bond from Whitney in 1841, in order to remove the cloud from his title, he did not thereby become a tenant at will of said Whitney, and was not estopped from denying Whitney's title. And if the demandant purchased the premises of Barrows and took his deed from Kilborn, (to whom Barrows had conveyed, taking back an agreement for a reconveyance,) and the demandant afterwards took possession under his deed from Kilborn, so made in pursuance of a

previous agreement with Barrows, then his negotiations with Whitney, if made to clear his title from doubt, did not make him a tenant at will of said Whitney, or estop him from claiming title against said Whitney, nor was his possession the actual possession of said Whitney.

*Howard & Strout, and Whitman,* for the tenants, in support of the exceptions.

It is agreed that the demanded premises were the property of Sumner Stone. The *demandant* claims title by deeds of Stone to Barrows, of Sept. 12, 1836; from Barrows to Kilborn, Sept. 13, 1836, (and quitclaim same to same, of Oct. 9, 1848;) and from Kilborn to the demandant, quitclaim, of April 2, 1849.

The tenants claim by attachment, the levy of execution upon same premises. Attachment, May 9, 1836; judgment, Nov. 20, 1837; and levy, Dec. 11, 1837.

The levy, being in due form, establishes the title of the tenants, as springing from the *attachment;* and this gives priority and precedence to their title. If the levy is sustained, the demandant's title must fail.

It appears that Wm. C. Whitney, the original party defending, recovered judgment for $4,817,73, against Stone, and that he was under the necessity of resorting to the real estate attached, in order to collect his debt, by levy of execution on twelve different parcels, including the demanded premises; and that, after every effort, he failed to collect the amount, by nearly two thousand dollars. It is to be presumed, therefore, that he would embrace all the property he could find to levy upon, and that he would not intentionally except anything from the levy, that would serve to pay the debt.

The demandant insists that the levy, *pro hac,* is void.

I. *The. tenants claim that the levy was duly made, and that it is sufficient to invest them with the title to the premises demanded, from the date of the attachment.* ·

1. The levy embraces the land and gristmill and appurtenances demanded.

A levy is to be construed by the rules applicable to the construction of deeds of conveyance; the execution debtor being regarded as grantor. *Gibson* v. *Waterhouse*, 4 Maine, 231; *Pride* v. *Lunt*, 19 Maine, 115; *Jewett* v. *Whitney*, 43 Maine, 251. And such a construction should be given as will sustain the levy, if possible. *Grover* v. *Howard*, 31 Maine, 550.

The appraisers and officers, in their return, describe the tract of land by metes and bounds, on which the gristmill stood at the time, and set it out, (an undivided half of it,) to the creditor. They describe the gristmill as " now standing on the premises." This surely embraces *land* and *mill*. For a conveyance of *land* (and the levy operates as a conveyance) includes all fixtures upon it — as trees, houses, mills, wharves, &c.

The appraisers say, at the commencement of their proceedings, that they, " having all been duly chosen, appointed and sworn to the faithful and impartial appraisement of such real estate of the within named Sumner Stone, as should be shown to us to be appraised, in order to satisfy this execution and all fees, *have viewed the several tracts of land*, lying in the county of Oxford, shown to us by the within named William C. Whitney, the creditor, as the estate of the within named Sumner Stone, and the following is the description of *said tracts of land*, to wit." And then, in reference to the premises now in controversy, they say : — " Also one other tract of land;" that is, that they have viewed said tract of land " situated in Waterford, in said county," &c., " which said *tracts of land* above described, we have *appraised*, on our oaths, at the sum of two thousand, one hundred and twenty-nine dollars and fifty-eight cents, and no more ; and we have *set out* the said tracts of land by metes and bounds to the creditor within mentioned, to satisfy this execution in part."

The demanded premises thus set out to the creditor, constituted the *gristmill privilege*, upon which the gristmill then stood, and upon which the new mill now stands.

2. By an exception of the *gristmill*, the privilege and every easement used with it would be included and excepted. So by a conveyance of a *gristmill, eo nomine*, the privilege and every such easement would pass. Or, as it is held, "a grant of a *mill* passes the right to the water also," and the land and privileges used with it. Coke Litt., 4–5; Bacon's Abr., Grant I, 4; *Carden* v. *Tuck*, Cro. Eliz., 89; 4 Cruise's Dig., (Greenl. Ed.,) Tit., 32, c. 21, §§ 40, 41, 42, and note; *Blake & al.* v. *Clark*, 6 Maine, 436; *Maddox* v. *Goddard*, 15 Maine, 218; *Rackley* v. *Sprague*, 17 Maine, 281; *Moore* v. *Fletcher*, 16 Maine, 63; *Wetmore* v. *White*, 2 Caine's Cases, 87; *Whitney* v. *Olney*, 3 Mason, 280; *Allen* v. *Scott*, 21 Pick., 25; *Johnson* v. *Rayner*, 6 Gray, 107.

The demandant contends that the *gristmill* was excepted, or excluded by the appraisers, from the levy. But, if they attempted to do so, it would present them in the absurd position of attempting to *set out to the creditor the premises*, and at the same time, and by the same act, *excluding* them from the operation of the levy.

3. *But in fact, no such exception, or exclusion of the gristmill was intended, or accomplished.*

The language of the appraisers and the return will not grammatically or fairly admit of any such conclusion. For the appraisers do not say that they *exclude* the gristmill; but they state that they *have viewed the tract of land*, &c., (the one undivided half,) "with one undivided half of a water privilege, sufficient for a gristmill, exclusive of the gristmill now standing on said premises." They are thus describing a *water privilege* which they had *viewed*, and which they say is sufficient for a gristmill exclusive of, or other than, the gristmill then standing on the premises, by way of recital. And their description has reference to the quality, extent or purpose of such water privilege, and not to the exclusion or exception of the mill.

They viewed the land and water privilege; but set out to the creditor the land, with its fixtures—the gristmill and

appurtenances, which go with the land, without any exception of any fixture whatever.

There are no apt words, or any certain description in the return, which could constitute an exception of the gristmill from the levy. Without such, no exception can exist. Shep. Touch., 77, 78 ; 4 Cruise's Dig., 327, § 68.

4. But, if the language used could be construed into an exception, it would be an exception of the gristmill, *with its privileges*—the use of the water, &c. ; and these were all that were embraced in that portion of the levy under consideration. The whole of this portion of the levy or grant constituted, in common parlance, only the mill privilege, as before shown, with its appurtenances, including the gristmill. The exception and the grant (the levy) would then be coëxtensive. Under such circumstances, the exception would be inoperative and void, and the grant effective. As an exception " must only be a part of the thing granted ; for if the exception extends to the whole, it will be void." And " it must be of such a thing as is severable from the thing granted—and of such a thing as he who excepts may retain it." (Authorities last cited.) A gristmill, severed from its privilege, ceases to be such in effect ; and as such, could not be retained, by the debtor in this case, on the privilege, or be excluded from the levy, for any practical purpose.

The *appraisal* was of the *land*, and of course, with all its fixtures, as no exception was made in such appraisal ; and at most, of a *water privilege* also — (an undivided half of each) — for that was supposed to be an additional privilege of water ; — additional to what was necessary for the use of the gristmill. Since, by turning to the deed of Young to Stone, the debtor, it will appear that it conveyed " the privilege of water for said mill, (the gristmill,) and *privilege of flowing water as far as Samuel Warren's land extends.*" Thus showing that the debtor owned a privilege of flowing water more than sufficient for the gristmill then standing there.

This supposed water privilege the creditor might well be desirous to obtain by his levy, from his insolvent debtor; and hence the language used by the appraisers in their recital : " a *water privilege* sufficient for a gristmill, exclusive of the gristmill now standing on said premises." And this water privilege they appraised with the land — the gristmill there standing, with its privileges, being embraced in the appraisal of the tract of land.

But, if the debtor did not own any other water privilege than that which was necessary for the use of the gristmill, still the including of land, water or privilege not owned by the debtor, did not invalidate the levy. *Grover* v. *Howard*, 31 Maine, 546; *Atkins* v. *Bean*, 14 Mass., 404; *Cutting* v. *Rockwood*, 2 Pick., 443.

All the debtor's interest would pass by the levy, although it embraced more than his interest. Statutes 1821, c. 52, § 1; Statutes 1821, c. 60, § 27; *Howe* v. *Wildes*, 34 Maine, 566.

The case of *Jewett* v. *Whitney*, 43 Maine, 242, was trespass *quare clausum*, not necessarily involving the title to the premises; and the opinion, so far as it discussed the title, was upon points not material to the determination of the case.

There is no ground for the concluding that the appraisers " separated the premises into three distinct rights, namely, the *land* the *water privilege*, and the *mill*," or that either was excepted or reserved, as before mentioned. Nor was it quite correct in the learned Judge, to say that there was no mention made of the mill in the valuation; for in valuing the tract of land on which the mill is mentioned as standing, the appraisers must be regarded as valuing the mill with the land — because they did not except it from their valuation — nor did they intend to do so, and thereby leave the *mill* for the debtor, who was unable to discharge the debt, and which would be useless to him, but valuable to the creditor.

Whether the valuation was high or low, we cannot now

determine; nor is it a matter of inquiry, or of importance at this time.

The return shows a want of technical accuracy, in some respects, in completing the levy, as is common in such cases; and yet not sufficient to justify the conclusion, by the Judge, that there was an intention to exclude the gristmill, and defeat the grant — the levy. The creditor needed all the property, and much more, to pay his debt; and would he intentionally except any from his extent?

II. But if the tenants do not maintain their title by attachment, and levy of execution, in all respects formal, still they have shown a title by adverse possession for more than *twenty years* before the commencement of this suit. Attachment, May 9, 1836; levy, Dec. 11, 1837; commencement of this action, October 20, 1858.

The instructions of the presiding Judge were erroneous in the matter of adverse possession, and must have misled the jury.

They are based upon a supposed state of facts, that did not exist or appear at the trial.

1. Because it did not appear that Barrows was in possession of the premises at the time of the levy by Whitney. There was no evidence to that fact, or effect.

2. Because it does not appear that Barrows "remained in possession until he sold his interest to the demandant," as stated by the Court to the jury. It does not appear that he ever sold or conveyed his interest, which he derived from Stone, or otherwise, to the demandant. On Sept. 12, 1836, he received a deed from Stone, and on the succeeding day conveyed to Kilborn the premises, taking from the latter an obligation, not under seal, to convey to him, Barrows, upon his making certain payments specified — which were never made.

There is therefore no evidence to sustain the instructions — that Barrows was in possession at the time of the levy; or that Whitney acquired but a transient seizin by the levy; or that Barrows remained in possession; or that

there was any disseizin in 1841; or that Barrows sold the premises, or his interest, to the demandant.

3. Because it does not appear that Barrows ever held adversely to Whitney, or resisted, or pretended to deny his title at any time. Indeed, it does not appear that Barrows ever had, or ever claimed to have, any title to the premises, after he conveyed to Kilborn, in September, 1836. Nor does it appear, by any evidence in the case, that either Barrows or Kilborn ever denied or controverted the title of the tenants. But it does appear, that both Barrows and the demandant undertook to acquire it by purchase, from Whitney.

4. Because, by the levy, Whitney acquired actual seizin and possession of the premises, as of May 9, 1836, when his attachment was made. The debtor (Stone) was then in possession, and subsequently assisted in the levy, by choosing an appraiser. And there is no evidence to rebut the legal and just presumption that the creditor's seizin continued in himself, and those claiming under him, for more than twenty years in succession. *Bryant* v. *Tucker*, 19 Maine, 383; *Nickerson* v. *Whittier*, 20 Maine, 223; *Nason* v. *Grant*, 21 Maine, 160.

*J. C. Woodman, contra.*

The opinion of the Court was drawn up by

KENT, J. — In this writ of entry, the demandant claims "one undivided half of a certain gristmill, and one undivided half of the land on which it stands." He traces a title to himself in the premises, unless a title to the same passed by the levy introduced. The question of the construction to be given to the language of that levy was before the Court in the case of *Jewett* v. *Whitney*, 43 Maine, 242. It was then determined, after full argument, that "the defendant, by means of the levy, acquired no title to the mill or to the land on which it stands." This is the estate claimed in the writ. We see no good reason for reversing that de-

cision. It is true, that, in the argument now presented, a point is made, which does not appear to have been presented or considered in the former case. It is now urged, that the exception "of the gristmill now standing on said premises" amounts to an exception of all that was included in the levy — being in effect an exception of the mill, land and water privilege, and therefore void. It is contended that, an exception must be of a *part* of the thing granted, and that if it extends to the whole it will be void, as being absurd.

However correct this proposition may be, as an abstract principle of law, it does not appear in this case, from the description of the premises set out in the levy, that no part of the land could be used or separated from the mill privilege. No evidence was given on that subject, and there is no plan or description of the premises, by which the fact can be established. The demandant claims only the mill and the land on which it stands. The description in the levy, by metes and bounds, refers to "a road," and to stakes and stones, showing that a portion of land on the shore was included, and not merely the land on which the mill stands. The appraisement also declares, that it is a tract of land with half a water privilege,— said *piece of land* being bounded as follows, &c., and concludes with the words, "which said tract of land and water privilege we have appraised," &c. In this state of the case, we are not called upon to determine how far the general principle, above alluded to, would apply in case of a reservation or exception, covering, in fact, all that was before taken, made in a *levy*, and not in a grant. There may be reasons why a voluntary grantor should not avail himself of an exception, which in effect revoked the entire grant, which do not apply to a title by levy. It would be not merely unjust, but apparently absurd, for a man to make a grant by deed, and, in the same deed, to revoke or except from its operation every thing which he had before granted. But a levy, although a statute conveyance, is a proceeding *in invitum.* The debtor is not a willing or

an active participator in passing the title from himself to his creditor. The creditor must see that all the requirements of the statute are complied with, and, if he fail, through any deficiency of description, or in any preliminary proceedings, he will not succeed in his attempt to obtain a title. The levy must be such in itself that the estate, whatever it is, is thereby divested from the debtor. It may certainly be a grave question, whether a levy, which is *felo de se*, by its terms or its exceptions, can be made vital and operative to pass the estate, on the ground that the exceptions are inconsistent, and nullify the conveyance, first intended by the appraisers. The creditor may reject such a levy, but, if he accepts it, must he not be bound by its terms, and claim only what he has lawfully acquired within the terms of the statute? If, for any cause, he does not have a good and clear title set out to him by the levy, he simply fails to acquire what he undertook to obtain, and the estate remains, as before, in his debtor. In case of a grant by deed, the law presumes that the party intended to convey something. In case of a levy, there is no presumption, as there is no voluntary conveyance, and the party must rely upon the return of the appraisers and the officer to give him an estate, not invalidated or rendered void by exceptions or qualifications. These views appear to us reasonable and correct, but, as before stated, the present case does not call necessarily for a decision on this point.

The tenants also claimed that their ancestors acquired a title *to the premises sued for*, by an adverse possession of twenty years before suit, and except to the ruling of the Judge, that the transient seizin, delivered to Whitney by the officer who made the levy, the possession of Barrows not being interfered with, was not such a possession as to constitute a disseizin of Barrows.

The Judge, on the whole case, further instructed the jury, "that the evidence in the case, on the question of title, would authorize them to find a verdict for the demandant."

This ruling is undoubtedly broad and comprehensive. The question is, whether it was, on the facts proved, erroneous.

The tenants do not contend that prior to 1841, which was but seventeen years before this action was commenced, there was any *actual* possession and holding by Whitney. But they claim that, by the levy, Whitney acquired actual seizin and possession, and that the legal and just presumption is, that this seizin of the creditor continued in himself, and those claiming under him, for more than twenty years, in succession, before the date of the writ.

Whatever might be the effect of such proceedings upon the question of an adverse, continuous seizin and possession of twenty years, in cases where the premises demanded are clearly *included* in the levy, it is manifest, that nothing short of an *actual* and adverse occupation by the creditor of the portion which he claimed to be included, but which is found on trial not to have been so included in the levy, can establish a title by adverse occupancy. The ground on which a seizin and legal possession of the whole tract is inferred from the recording of a deed and the occupancy of a part is, that the deed covers and describes the *whole* tract, and thus gives notice to all of the extent of the grantee's claim. But it would hardly be contended, in such case, or in case of a levy, where there has been no actual possession and holding, by himself or tenant, of any part of the premises, that the seizin and momentary possession, inferred from the act of the officer, could extend to that portion which was not, in fact, included in the description of the estate.

The decision being, that the gristmill and the land on which it stands were not included in the levy, no seizin of *that part* was ever delivered to the creditor by the officer. It is outside of that levy — was never a part of it, and the title remained in the debtor. If the creditor, believing and assuming that the gristmill, &c., was included in his levy, had taken actual and immediate possession of it, and had kept that possession openly, notoriously, exclusively and adversely to every one, claiming it as his own for twenty years,

he might acquire a right thereto, which would avail him against every one. But he would acquire this right solely by virtue of his adverse *possession,* and not by virtue of anything contained in his levy.

The ruling of the Judge, on the question of title, was therefore correct.

It would seem, from the exceptions, that a question was raised by the pleadings and upon the evidence in relation to "betterments." The case, as reported, does not disclose what the verdict on this point was, and the counsel for the tenants, in their able argument, do not present any grounds of exception to the ruling of the Judge, bearing on this matter. Those rulings appear to us as favorable to the tenants as they had a right to require.

We see no reason to set aside the verdict on the motion. The case is peculiarly one of law. There is very little conflict of testimony or dispute as to facts.

*Exceptions and motion overruled.*

APPLETON, C. J., DAVIS, DICKERSON and BARROWS, JJ., concurred.

WALTON, J., having been of counsel in the former suit, did not sit in this.